UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD NEWBERNE,

       Plaintiff,

v.

SUNSET SOLUTIONS GROUP, LLC,
RETRIEVABLE ASSET SOLUTIONS LLC,
BLUE CIRCLE ASSET MANAGEMENT LLC,
S & J ACQUISITIONS LLC,
CAPITAL ASSET HOLDINGS FIRM, LLC,
MARION FRANKLIN MCILWAIN,
SEAN DION MCILWAIN, and
STACEY LARMINGO BENJAMIN,

       Defendants.

_____/

## COMPLAINT

### I.    Introduction

1.    Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit credit card account and fake debt. Defendants are debt collectors and credit identity thieves who acquired and used the stolen information and counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other adverse consequences, and extort the payment of money from plaintiff.

2.    Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*.

3.    Defendants, along with other entities and individuals to be identified in discovery,

1

are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.      These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

6.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed

November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint. See also, Federal Trade Commission v. National Landmark Logistics, LLC et al., U.S. District Court, District of South Carolina, Rock Hill Division, Case No. 0:20-cv-02592-JMC, which described the same type of scam that is described in this complaint.

7.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

## II.      Jurisdiction

8.      The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.      Parties

9.      Plaintiff Donald Newberne is an adult, natural person. Mr. Newberne is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Newberne is a "person" as the term is defined and used in the DPPA.

10.      Defendant Sunset Solutions Group, LLC ("SSG") is a Wyoming limited liability company, registered March 23, 2018, FEIN: 82-496xxxx. Documents filed by SSG with the State of Wyoming state that the "Principal Office Address" for SSG is 30 North Gould Street, Suite R, Sheridan, Wyoming 82801, but the address is merely a virtual office rented by defendants from

Wyoming Mail Forwarding LLC, for the purpose of concealing defendants' identities and true

locations. The registered agent for SSG is Registered Agents Inc., 30 North Gould Street, Suite

R, Sheridan, Wyoming 82801. SSG uses interstate commerce and the mails in a business the

principal purpose of which is the collection of debts. SSG regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SSG is a

"debt collector" as the term is defined and used in the FDCPA.

      11.     On March 22, 2018, defendants registered through Godaddy.com, LLC, the

internet domain www.SunsetSolutionsGroup.com. The domain links to an active website that

describes SSG as a "full service, compliance-centric Receivables Management Company which

offers first and third-part debt collection services," "headquartered in Charlotte, North Carolina"

with "branch offices in Lancaster, South Carolina, Decatur, Georgia and Titusville, Florida." The

website states that the CEO of SSG is defendant Marion Franklin McIlwain and the COO of SSG

is defendant Sean Dion McIlwain. The website states that the SSG "Corporate Headquarters" is

at 8163 Kensington Drive, Suite C, Waxhaw, North Carolina 28173, but the address is merely a

private mailbox rented by defendants from Annex Brands, Inc, doing business as PostalAnnex,

for the purpose of concealing defendants' identities and true locations. Defendants use the

domain to communicate by email using multiple addresses, including:

compliance@sunsetsolutionsgroup.com. and marion@sunsetsolutionsgroup.com.

      12.     On June 1, 2018, defendant Marion Franklin McIlwain in his capacity as

Managing Member of SSG filed with the State of North Carolina, an Application for Certificate

of Authority for SSG to transact business at 2740 East WT Harris Boulevard, Suite 100,

Charlotte, North Carolina 28213. Mr. McIlwain also filed with the State of North Carolina an

application for SSG to operate a "Collection Agency" at that same address, but the application

was denied.

13.     On March 17, 2020, a Certificate of Reinstatement for SSG was filed with the

State of Wyoming by defendant Marion Franklin McIlwain, in his capacity as "Member," email

address marion@sunsetsolutionsgroup.com, and telephone number 716-903-2491.

14.     SSG through its employees and agents directly and indirectly participated in the

efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

15.     Defendant Retrievable Asset Solutions LLC ("RAS") is a North Carolina limited

liability company, registered June 6, 2016. The 2020 Annual Report filed with the State of North

Carolina by defendant Marion Franklin McIlwain in his capacity as CEO of RAS states that the

"Principal Office Street Address" for RAS is 8163 Kensington Drive, Suite C, Waxhaw, North

Carolina 28173, but the address is merely a private mailbox rented by defendants from Annex

Brands, Inc, doing business as PostalAnnex, for the purpose of concealing defendants' identities

and true locations. RAS likely does business at 5304 Panola Industrial Boulevard, Decatur,

Georgia 30035. RAS likely has also done business at 8604 Cliff Cameron Drive, Charlotte,

North Carolina 28269. The annual report states that the business of RAS is: "buy, sale and collect

on third party debt." The registered agent of RAS is Marion Franklin McIlwain, 3911 Litchfield

Drive, Waxhaw, North Carolina 28173. RAS uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts. RAS regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. RAS is a "debt collector" as the term is defined and used in the FDCPA.

16.     RAS through its employees and agents directly and indirectly participated in the

efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

17. Defendant Blue Circle Asset Management LLC ("BCAM") is a New York limited liability company, registered February 19, 2014. BCAM does business at 2740 East WT Harris Boulevard, Suite 100, Charlotte, North Carolina 28213. BCAM also has done business at 8604 Cliff Cameron Drive, Charlotte, North Carolina 28269; 9700 Research Drive, Suite 146, Charlotte, North Carolina 28262; and 5304 Panola Industrial Boulevard, Decatur, Georgia 30035. BCAM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. BCAM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. BCAM is a "debt collector" as the term is defined and used in the FDCPA.

18. On September 9, 2015, defendant Marion Franklin McIlwain registered Blue Circle Asset Management Ltd in England and Wales, but the entity was dissolved on February 14, 2017.

19. On September 23, 2014, defendants registered through Godaddy.com, LLC, the internet domain www.bluecircleassetmanagement.com. The domain links to an active website that describes BCAM as "dedicated to providing the highest quality in consumer consultation whether financial or legal. We're here to help, to listen, and to offer advice." The website states that BCAM does business at 8604 Cliff Cameron Drive, Charlotte, North Carolina 28269, telephone number 980-938-0121, email compliance@bluecircleasset.com.

20. On February 19, 2014, defendants registered through Tucows Domains Inc. the internet domain www.bluecircleasset.com. The domain has expired.

21. On May 21, 2020, a UCC Statement (#20200058727E) was filed with the North Carolina Secretary of State, UCC Division, naming defendant Blue Circle Asset Management LLC, 2740 East WT Harris Boulevard, Suite 100, Charlotte, North Carolina 28213, as debtor,

and the U.S. Small Business Administration, 2 North Street, Suite 320, Birmingham, Alabama 35203, as the secured party, and listing as collateral, chattel paper, accounts receivables, proceeds thereof, and equipment, including computers. Upon information and belief, defendants have financed their purchase of stolen and counterfeit consumer accounts through the United States government, as well as the computers and other equipment used by defendants to operate their credit identity theft and debt collection scam. The loan documents between defendants and the government will need to be obtained in discovery.

22.     On November 2, 2016, the Consumer Financial Protection Bureau filed a lawsuit against Douglas MacKinnon et al., alleging that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint. *Consumer Financial Protection Bureau v. Douglas MacKinnon et al.*, U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG. Attached to the government's complaint was a list of eighty-seven (87) "Collection Shops" allegedly operated

23.     Defendants own, control and use a Merchant Account established in the name of "Blue Circle Management," located in Decatur, Georgia, to receive credit card and debit card payments from their victims. Money deposited in the Merchant Account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application that was filed by defendants with the Acquiring Bank to create the Merchant Account, as well as the related monthly account statements and other account records, will need to be obtained from the Acquiring Bank via subpoena in discovery, so that plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' debt collection scam.

24.     BCAM through its employees and agents directly and indirectly participated in the

efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

25.     Defendant S & J Acquisitions LLC ("SJA") is a North Carolina limited liability company, registered March 27, 2019. The Owner/Organizer, Member, Manager, Director of Operations and Registered Agent for SJA is defendant Sean Dion McIlwain, 6648 Pinta Court, Charlotte, North Carolina 28227. SJA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SJA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SJA is a "debt collector" as the term is defined and used in the FDCPA.

26.     SJA through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

27.     Defendant Capital Asset Holdings Firm, LLC ("CAHF") is a North Carolina limited liability company, registered May 19, 2017. The 2019 Annual Report filed with the State of North Carolina by defendant Stacey Larmingo Benjamin in his capacity as President of CAHF states that the "Principal Office Street Address" for CAHF is 4633 Brandie Glen Road, Charlotte, North Carolina 28269, but the address is merely Mr. Benjamin's residential address. The true place of business for CAHF is likely 2740 East WT Harris Boulevard, Suite 100, Charlotte, North Carolina 28213 and/or 8604 Cliff Cameron Drive, Charlotte, North Carolina 28269. The annual report states that the business of CAHF is: "Accounts Receivable." The annual report provides a "Principal Office Phone Number" of 704-941-8444, which is registered to Mr. Benjamin. The registered agent of CAHF is Remedy Financial Services, LLC, 301 East Woodlawn Road, Suite 1, Charlotte, North Carolina 28217, which is merely a private mailbox at a FedEx store. CAHF uses interstate commerce and the mails in a business the principal purpose

of which is the collection of debts. CAHF regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CAHF is a "debt collector" as the term is defined and used in the FDCPA.

28.    CAHF through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

29.    Defendants Sunset Solutions Group, LLC, Retrievable Asset Solutions LLC, Blue Circle Asset Management LLC, S & J Acquisitions LLC and Capital Asset Holdings Firm, LLC are collectively referred to as the "Corporate Defendants" in this complaint.

30.    Defendant Marion Franklin McIlwain, also known as Marion Franklin McIlwain, Jr., is a natural person, age 47, purportedly residing at 3911 Litchfield Drive, Waxhaw, North Carolina 28173. Mr. McIlwain has used multiple telephone numbers and email addresses to conduct defendants' credit identity theft and debt collection scam, including 716-903-2491, marion@sunsetsolutionsgroup.com and m.mcilwain323@gmail.com. Mr. McIlwain is an owner, officer, director, member, manager, employee and agent of the Corporate Defendants. Mr. McIlwain uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. McIlwain regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. McIlwain is a "debt collector" as the term is defined and used in the FDCPA.

31.    Defendant Marion Franklin McIlwain maintains a profile on the internet website Linkedin, stating that Mr. McIlwain has been the President of defendant Blue Circle Asset Management LLC from February 2013 to the present, and "I been a debt specialist for almost 20 years. My goal is to get my office to a 40 man office and our objective is to try and close over

[$]150,000 a month." https://www.linkedin.com/in/marion-mcilwain-73b4b191/. The profile

provides the website for Mr. McIlwain's company, www.bluecircleassetmanagement.com.

32.    Defendant Marion Franklin McIlwain (a) created the collection policies and

procedures used by the Corporate Defendants and their employees and agents, in connection with

their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily

collection operations of the Corporate Defendants, (c) oversaw the application of the collection

policies and procedures used by the Corporate Defendants and their employees and agents, (d)

drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants

and their employees and agents, to collect debts from consumers, including the tactics and scripts

that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this

complaint, (e) ratified the unlawful debt collection practices and procedures used by the

Corporate Defendants and their employees and agents, in connection with their common efforts

to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the

unlawful debt collection practices used by the Corporate Defendants and their employees and

agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

33.    Defendant Marion Franklin McIlwain directly and indirectly participated in the

efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

34.    Defendant Sean Dion McIlwain is a natural person, age 51, purportedly residing at

6648 Pinta Court, Charlotte, North Carolina 28227. Mr. McIlwain also owns a residence at 85

Highgate Avenue, Buffalo, New York 14214. Mr. McIlwain has used multiple email addresses to

conduct defendants' credit identity theft and debt collection scam, including

sean.mcilwain@yahoo.com. Mr. McIlwain is an owner, officer, director, member, manager,

employee and agent of the Corporate Defendants. Mr. McIlwain uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. McIlwain regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. McIlwain is a "debt collector" as the term is defined and used in the FDCPA.

35.    On March 4, 2019, defendant Sean Dion McIlwain, 6648 Pinta Court, Charlotte, North Carolina 28227, filed an Assumed Business Name Certificate with the Register of Deeds for Mecklenburg County, North Carolina (BK:33327 PG:727-724, Instrument # 2019024076), to operate a debt collection "CALL CENTER" under the assumed name "S & J Aquisitions."

36.    Defendant Sean Dion McIlwain (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

37.     Defendant Sean Dion McIlwain directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

38.     Defendant Stacey Larmingo Benjamin is a natural person, age 49, purportedly residing at 1511 Love Road, Monroe, North Carolina 28110; 1815 Love Road, Monroe, North Carolina 28110; or 4633 Brandie Glen Road, Charlotte, North Carolina 28269. Mr. Benjamin has used multiple telephone numbers and email addresses to conduct defendants' credit identity theft and debt collection scam, including 704-941-8444 and sbenjamin_07@yahoo.com. Mr. Benjamin is an owner, officer, director, member, manager, employee and agent of the Corporate Defendants. Mr. Benjamin uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Benjamin regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Benjamin is a "debt collector" as the term is defined and used in the FDCPA.

39.     Mr. Benjamin (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f)

had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

40.     Mr. Benjamin directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

41.     Defendants and their employees and agents have used multiple telephone numbers in connection with defendants' credit identity theft and debt collection scam, including: 704-941-8444; 716-903-2491; 803-228-3045; 803-396-1438; 833-545-0808; and 855-797-5605.

42.     Defendants and their employees and agents have used multiple email addresses in connection with defendants' credit identity theft and debt collection scam, including: marybeth@accountant.com.

43.     Plaintiff is proceeding against defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an

alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

44.    All defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

45.    Defendants operate as a single entity, commonly owned, operated and managed, operating from shared office space, sharing the same staff, equipment, supplies and telephonic services, and commingling revenue, expenses and payroll.

46.    An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

47.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including

the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

48.    Sometime prior to January 2019, plaintiff Donald Newberne's private, personal

and financial information, including Mr. Newberne's Social Security Number, date of birth,

residential address, telephone numbers, and banking information, was compromised, stolen and

unlawfully used to create counterfeit credit card accounts, along with related, non-existent and

allegedly unpaid debt.

49.    The perpetrators included Mr. Newberne's counterfeit account in multiple

portfolios containing thousands of other counterfeit credit card accounts, and then sold the

portfolios to multiple criminal enterprises across the country, to be used to contact and threaten

consumers with litigation, prosecution and other adverse consequences, in efforts to extort the

payment of money from the identity theft victims.

50.    One of the counterfeit accounts created with Mr. Newberne's stolen private,

personal and financial information, was a MasterCard credit card account, supposedly issued by

Citibank N.A., Account Number 5478963245787249.

51.    Mr. Newberne denies owing any money to Citibank, N.A. or any other entity in connection with the account.

52.    According to Citibank, N.A., Mr. Newberne has never had a credit card account with Citibank, N.A. or any entity affiliated with Citibank, N.A.

53.    According to Citibank, N.A., Mr. Newberne has never owed any money to Citibank, N.A. or any entity affiliated with Citibank, N.A.

54.    According to Citibank, N.A., neither Citibank, N.A. nor any entity affiliated with Citibank, N.A., has ever issued a credit card with the Account Number 5478963245787249.

55.    A Bank Identification Number or "BIN" is the initial four to six numbers that appear on a credit card account. The BIN is a part of a numbering system developed by the American National Standards Institute to uniquely identify the financial institution that issues a specific credit card.

56.    The BIN (547896) for Mr. Newberne's counterfeit account is the BIN for MasterCard business credit cards, issued by Unipol Banca S.P.A., a bank located in Bologna, Italy, that was acquired in 2019 by BPER Banca, a bank also located in Italy.

57.    Mr. Newberne has never had an account of any kind with Unipol Banca S.P.A. Mr. Newberne denies owing any money to Unipol Banca S.P.A. or to any entity ever affiliated with Unipol Banca S.P.A.

58.    In March of 2019, a non-party entity named Liberty Solutions & Associates, LLC ("LSA"), an active South Carolina limited liability company, and calling itself TriStar Litigation, somehow acquired a portfolio of counterfeit accounts that included Mr. Newberne's counterfeit

16

Citibank account, along with Mr. Newberne's stolen personal and financial information.

59.     In March of 2019, employees and agents of LSA placed calls and spoke to Mr. Newberne by telephone, and falsely threatened Mr. Newberne with prosecution, litigation and other adverse consequences, unless Mr. Newberne paid money to supposedly satisfy the non-existent debt. In response to the threats, Mr. Newberne hired an attorney and the matter then settled.

60.     On July 13, 2020, the government filed a lawsuit against LSA and others for running the same type of scam that is described in this complaint, *Federal Trade Commission v. National Landmark Logistics, LLC et al.*, U.S. District Court, District of South Carolina, Rock Hill Division, Case No. 0:20-cv-02592-JMC.

61.     Despite the foregoing, the defendants named in this complaint are the most recent group of scam operators that have somehow acquired a portfolio of counterfeit accounts that included Mr. Newberne's counterfeit account, along with Mr. Newberne's stolen personal and financial information, and as described below, used that information to contact and falsely threaten Mr. Newberne with prosecution, litigation and other adverse consequences, in efforts to extort the payment of money from Mr. Newberne.

62.     On August 20, 2020, defendants placed a call from telephone number 833-474-0166 to Mr. Newberne's cellular telephone and left the following pre-recorded message on Mr. Newberne's voice mail: "This call is in reference to an active Order of Location processed against you. Please press any key to speak to a mediation specialist regarding the matter. Two formal complaints are being processed in your County for forcible recovery by default due to non-activity on your account. Be advised you have a right to counsel and you have

17

a right to resolve this voluntarily. This is a time sensitive matter that requires your immediate attention. Either yourself or your legal representative need to contact the office as soon as possible or press any key to speak to a mediation specialist. Failure to do so will be considered a direct refusal. Thank you."

63. On August 21, 2020, in a return call to telephone number 833-474-0166, defendants' employee and agent who identified herself as Melissa Morrell with Sunset Solutions, telephone number 833-545-0808, extension 201. In the ensuing conversation, defendants' employee and agent made the following representations:

a) Mr. Newberne owed a balance of $2,757.41 in connection with an unpaid MasterCard revolving credit card account issued by Citibank, Account No. 5478963245787249, that went into default before 2014.

b) Mr. Newberne was being criminally "charged" with "malicious intent to commit fraud."

c) Defendants had been filed against Mr. Newberne seeking $2,757.41 in damages.

d) "They're seeking to a file a judgment against your name and Social [Security Number]. If you're working, they're petitioning for a wage garnishment and freezing bank accounts. They're doing whatever they can to get their, they're seeking the judgment. Let me give you that judgment amount, if you do have to go to court, $5,489.32. That's for damages if you appear in court and this will go out to all three major credit bureaus as well, so, I don't know, that's why we was calling to see if you're trying to

18

take advantage of the pandemic, they're trying to minimize their trips back and forth to court if they can just to help you out and to help them out as well."

e)    "I was just calling to see if I could help you out and get you qualified for the Pandemic Relief Program. The Pandemic Relief Program, well before it expires, it would allow me to drop that balance in half and that'd get it down to $1,378.70, and that allows you to put in a counter offer towards that balance to see if the attorneys are willing to accept it to close it out so they can clear your name."

f)    "You have a right to put in a counter offer towards the $1378.70. What's the most you think you could do? I could probably get a hardship attached to this as well if you're trying to close this out today, I don't know, I'd have to get approval though. If I got this down to $500.00 hardship can you clear this out today? I'd have to go to bat for you."

g)    "One of the attorneys was speaking with me [to approve the hardship amount]."

64.    On August 21, 2020, in response to defendants' false threats of prosecution, litigation, and other adverse consequences, and solely for the purpose identifying and suing the entities who had acquired and used Mr. Newberne's stolen personal and financial information to contact Newberne and make the false threats, Mr. Newberne authorized a debit card payment to defendants in the amount of $100.00.

65.    On August 21, 2020, defendants caused Mr. Newberne's debit card payment of

19

$100.00 to be transferred to defendants' Merchant Account established in the name "Blue Circle Management," located in Decatur, Georgia. According to the debit card's issuing bank, the payment of $100.00 posted to defendants' Merchant Account on August 24, 2020. According to the debit card's issuing bank, defendants' falsely ran the payment as an "In Person" and "Miscellaneous Debit" transaction.

66.     On August 21, 2020, Mr. Newberne received an email from defendants using the address marybeth@accountant.com. Attached to the email was a three-page letter agreement on the letterhead of Sunset Solutions Group LLC, 803-396-1438, which if signed, purported to authorize debit card payments from Mr. Newberne to defendants. The document falsely stated that Mr. Newberne owed an unpaid balance of $2,757.41 in connection with a credit card issued by Citibank, Account No. 5478963245787249, also known as Reference Number CIT18832. The document falsely stated that Sunset Solutions Group LLC would file a lawsuit against Mr. Newberne if Mr. Newberne failed to make all payments described in the document. Also attached to the email was a one-page receipt regarding Mr. Newberne's payment of $100.00. Also attached to the email was a DocuSign Certificate of Completion, stating that the documents originated with "MARY BETH, 4633 BRANDIE GLEN RD, CHARLOTTE, NC 28269, marybeth@accountant.com, IP Address: 172.73.22.86."  Also attached to the email was a DocuSign Electronic Record And Signature Disclosure, stating that the proposed transaction would be between Mr. Newberne and defendant Capital Asset Holdings Firm, LLC, with email addresses marybeth@accountant.com and sbenjamin_07@yahoo.com. Mr. Newberne refused to sign or otherwise agree to the terms of any of the documents. A copy of the email and related documents are attached to this complaint as Exhibit A.

20

67.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are counterfeit, time-barred, or not owed, and through the use of unlawfully obtained account and personal information.

68.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

69.     Defendants and their employees and agents falsely represented that Mr. Newberne owed money in connection with a counterfeit account.

70.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Newberne's alleged debt.

71.     Defendants and their employees and agents falsely represented that Mr. Newberne owed a debt that is not owed.

72.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

73.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Newberne's personal and financial information, in an effort to coerce the payment of money from Mr. Newberne.

74.     Defendants and their employees and agents falsely represented that they are a mediation firm.

21

75.     Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

76.     Defendants and their employees and agents falsely represented that they have a Legal Department.

77.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

78.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

79.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Newberne to collect the alleged debt.

80.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Newberne to collect the alleged debt.

81.     Defendants and their employees and agents falsely represented and falsely implied that defendants represent Citibank.

82.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit had been filed by Citibank against Mr. Newberne.

83.     Defendants and their employees and agents falsely represented that Mr. Newberne had committed fraud.

84.     Defendants and their employees and agents falsely represented that Mr. Newberne had defrauded a lending or financial institution.

85.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Newberne had committed a crime.

86.     Defendants and their employees and agents falsely implied that Mr. Newberne was going to be arrested and prosecuted unless Mr. Newberne paid money to defendants.

87.     Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to entered against Mr. Newberne.

88.     Defendants and their employees and agents falsely represented that Mr. Newberne owed a debt that included court costs, filing fees and attorney fees.

89.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Newberne's assets were going to be garnished.

90.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Newberne's bank accounts were going to be frozen.

91.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Newberne's credit history and score with all three major credit bureaus was going to be negatively affected unless Mr. Newberne paid money to defendants.

92.     Defendants did not intend to file a lawsuit against Mr. Newberne in any court in efforts to collect the alleged debt.

93.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

94.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

95.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

96.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

97.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

98.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

99.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

100.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

101.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

102.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

103.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

104.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

105.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

106.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

107.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

108.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

109.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

110.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

111.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

112.    Defendants and their employees and agents failed to timely send to Mr. Newberne a notice containing the information required by 15 U.S.C. § 1692g(a).

113.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

114.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

115.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

116.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

117.    In connection with efforts to collect an alleged debt from Mr. Newberne, defendants obtained and used personal information regarding Mr. Newberne from an internet

skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

118.     The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

119.     The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

120.     The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

121.     The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

122.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

123.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

124.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Newberne.

125.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Newberne.

126.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Newberne that was derived from Mr. Newberne's motor vehicle record.

127.    Alternatively, the entity that obtained Mr. Newberne's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Newberne that was derived from Mr. Newberne's motor vehicle record.

128.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

129.    Defendants knowingly obtained, disclosed and used Mr. Newberne's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

130.   No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Newberne's personal information obtained from the database.

131.   No defendant had Mr. Newberne's consent, permission, authorization or waiver to obtain Mr. Newberne's personal information from the database.

132.   A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

133.   The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

134.   Defendants intentionally and wilfully violated the DPPA.

135.   Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

136.   As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

## V.   Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

137.   Plaintiff incorporates the foregoing paragraphs by reference.

138.   Each defendant has violated the FDCPA.  Each defendant's violations of the

FDCPA include, but are not necessarily limited to, the following:

a)   Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)   Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)   Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)   Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

139.   Plaintiff incorporates the foregoing paragraphs by reference.

140.   Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)   Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)   Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's

personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies

of any and all documents of any kind that contain any of plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal

information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).


Dated: August 27, 2020                    /s/ Phillip C. Rogers
                                          Phillip C. Rogers (P34356)
                                          Attorney for Plaintiff
                                          6140 28th Street SE, Suite 115
                                          Grand Rapids, Michigan 49546-6938
                                          (616) 776-1176
                                          ConsumerLawyer@aol.com